**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KELLY FISHER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER ROBERT EVANCHICK,<br>PENNSYLVANIA STATE POLICE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 24-1187<br>Judge Nora Barry Fischer |

# MEMORANDUM OPINION

## I. INTRODUCTION

On July 26, 2022, Plaintiff Kelly Fisher ("Plaintiff") was injured after the car she was driving in New Castle, Pennsylvania was hit by a suspect who ran a stop sign as he was being pursued by state troopers in a marked Pennsylvania State Police ("PSP") vehicle. (Docket No. 1-1). Plaintiff has voluntarily dismissed claims against several individuals who have now been terminated as parties and her remaining causes of action include a § 1983 claim asserting violations of her right to substantive due process under the Fourteenth Amendment against PSP Commissioner Robert Evanchick ("Evanchick") in his individual capacity, and negligence claims against the PSP. (Docket No. 50).

Defendants have moved for summary judgment on all remaining claims. (Docket Nos. 33-36). Plaintiff contests the entry of summary judgment and requests leave to amend her Complaint in her opposition brief. (Docket No. 44). Defendants maintain that leave to amend should be denied as untimely. (Docket No. 48). The Motion has been fully briefed in accordance with Local Rule 56 and is now ripe for disposition. (Docket Nos. 33-36; 44-47; 48-49).

After careful consideration of the parties' positions and for the following reasons,

Plaintiff's request to amend is denied and Defendants' Motion [33] is granted, in part, and denied, in part. Specifically, Defendants' Motion is granted to the extent that summary judgment will be entered in favor of Evanchick on the § 1983 claim but denied, without prejudice, in all other respects as the Court will decline supplemental jurisdiction over the negligence claims against the PSP and remand this matter to state court pursuant to 28 U.S.C. § 1367(c).

## II. BACKGROUND

In her Complaint, Plaintiff alleges that on July 26, 2022, she was injured after Kevin Gardner ("Gardner") ran a stop sign at East Lutton Street and crashed into the vehicle she was driving on East Washington Street in New Castle, Pennsylvania. (Docket No. 1-1). She avers that Corporal Cassandra Miller ("Miller") was the driver of the PSP vehicle pursing Gardner and brings a § 1983 state created danger claim against Miller asserting that she violated Plaintiff's Fourteenth Amendment rights by initiating and continuing the pursuit that led to her injuries. (*See* Docket No. 1-1 at ¶¶ 18, 22-28, 30, 32-34, 39-41, 53, 59-77). She asserts § 1983 claims for supervisory liability against Miller's alleged supervisors, Commanding Officer John R. O'Day, Jr., Commanding Officer William A. Maitland, and Evanchick because they "failed to adopt, train and/or enforce appropriate vehicle pursuit policies to employees of the [PSP]" which "led to the unconstitutional police pursuit conducted by Defendant Miller and ultimately the injuries to the Plaintiff." (*Id.* at ¶¶ 83-84; *see also id.* at ¶¶ 53, 56, 58). Plaintiff also added state law claims against Miller (negligence and reckless disregard for safety) and the PSP (negligence and negligence-vicarious liability). (*Id.* at ¶¶ 89-11).

During discovery, Plaintiff learned that Miller was not involved in the pursuit, but she did not amend the pleadings, despite the Court setting deadlines for same. To that end, at the conclusion of the Case Management Conference on September 10, 2024, the Court issued a

detailed Case Management Order establishing deadlines of September 13, 2024 for initial disclosures; January 7, 2025 for the parties to amend pleadings or join new parties; and March 7, 2025 for their completion of fact discovery.[1] (Docket Nos. 10; 11). The fact discovery deadline was later extended to April 21, 2025. (Docket No. 20). On the date that amendments and joinders were due, i.e., January 7, 2025, the parties filed a Joint Discovery Status Report wherein they advised the Court that they exchanged initial disclosures on September 13, 2024 and "[w]ithin their initial disclosures, Defendants provided extensive documents regarding the underlying facts of the pending case in addition to the video of the incident." (Docket No. 17 at 1-2). The parties further reported that "[f]rom this information, Plaintiff identified three primary agents, servants and/or employees of the Defendant that she intends to depose" and issued notices of deposition to Miller, Corporal Sherry A. Hogue ("Hogue") and Corporal Christina A. Marth ("Marth"). (Docket Nos. 14-17).

The Court recalls from the Case Management Conference that one of the documents which defense counsel had agreed to produce as part of the initial disclosures was a lengthy PSP report of the investigation of Gardner, attached as Exhibit A to Defendants' Motion for Summary Judgment. (*See* Def. Ex. A, Docket No. 35-1). The PSP report states unequivocally that Marth was the driver involved in the pursuit of Gardner; Hogue was a passenger in the vehicle; and Miller arrived on scene after the wreck and investigated the Commonwealth's criminal case against Gardner. (*Id.* at 22-24).

Plaintiff then conducted depositions of all three individuals who confirmed their respective roles in the events of this case. (*See* Docket Nos. 45-2; 45-2; 45-9). Indeed, at Miller's deposition on February 11, 2025, Plaintiff's counsel told Miller that "I think it is quite possible that you

---

[1] The Court also referred the case to ADR but the case was not resolved at an Early Neutral Evaluation session with the Hon. Kenneth J. Benson (ret.) on November 13, 2024. (Docket Nos. 12; 13).

shouldn't be named in this lawsuit" and "that is something I can discuss with your attorney, barring me discovering something that I don't already know." (Docket No. 45-9 at 6). At the conclusion of Miller's deposition, counsel added that "I'll have a conversation with your attorney about whether or not you should even be in this case, I think." (*Id.* at 52-53). Marth and Hogue were deposed on the same day and described their respective roles, i.e., that Marth was the driver of the vehicle which pursued Gardner and Hogue was a passenger. (*See* Docket Nos. 45-1; 45-2). Later, at his own deposition on March 27, 2025, Evanchick stated that he had a "concern that one of the people that were named in the lawsuit was allegedly driving the vehicle, and [it] turns out that person appears to be [..] the investigating officer for the incident," i.e., Miller. (Docket No. 45-3 at 55-56).

The case proceeded to expert discovery and Plaintiff engaged two experts who both acknowledged that Marth and Hogue were the officers involved in the pursuit. (Docket Nos. 45-5; 45-6). Stephen Becker of Robson Forensic, Inc. prepared a technical report wherein he reviewed the dash camera video of the pursuit and other evidence and concludes, to a reasonable degree of professional and scientific certainty, that "Marth entered East Lutton Street behind the GMC [that Gardner was driving] from Pollock Avenue and traveled behind the suspect vehicle for about three-quarters of a mile" and that "Marth was traveling at about 56 to 60 mph near Cunningham to Randolph Street and slowed while going around the bend to the left going about 45 to 47 mph prior to slowing when approaching the collision at East Washington Street." (Docket No. 45-6 at 9).

Former law enforcement officer Paul Grattan, Jr. of Graypoint Strategies, LLC prepared an expert report wherein he also notes that Marth and Hogue were the involved officers and then reviews all of the evidence in the case and opines, among other things, that: the PSP "pursuit policy

did not meet common vehicle pursuit safety standards"; the officers may have felt increased pressure to apprehend offenders and take more aggressive enforcement actions as they were involved in a proactive detail, "Operation Stamp Out" at the time of the pursuit; the officers lacked sufficient justification for initiating the pursuit, were reckless in pursuing the suspect vehicle, and violated certain PSP policies during the pursuit; and, by engaging in the pursuit and not quickly terminating it, the officers "may have contributed to [Gardner] colliding with the victim/plaintiff." (Docket No. 45-5 at 1-17).

Viewing the facts in light most favorable to Plaintiff, the record developed during discovery established that:

- Miller was not the driver of the PSP vehicle that pursued Gardner leading to the accident with Plaintiff's vehicle, (Docket No. 35-1 at 22-24);

- the PSP vehicle was driven by Marth, with Hogue riding as her passenger, (*id.*);

- Gardner accelerated upon seeing the PSP vehicle leading Marth to initiate and continue the pursuit on East Lutton Street through a residential neighborhood, (*see* Dash Cam Video, Def. Ex. F, Docket No. 35-6);

- during the brief pursuit which covered ¾ of a mile and lasted approximately one minute, Marth's vehicle reached speeds of up to 60 miles per hour but had decelerated to 45-47 miles per hour and was nearly a block away at the time Gardner drove through a stop sign and crashed into Plaintiff's vehicle on East Washington Street, (*see id.*; *see also* S. Becker Technical Report, Pl. Ex. 6, Docket No. 45-6);

- Miller arrived on scene after the accident and served as the lead investigator of the criminal case against Gardner, (*see* Docket Nos. 35-1; 35-6; 45-6); and,

- Evanchick served as the Commissioner of the PSP at the time, he was not present on scene and his only role involved approving the PSP vehicle pursuit policy in effect on the date in question, (*see* Docket Nos. 45 at ¶¶ 17-21; 49 at ¶¶ 17-21).

As a result of the accident, Plaintiff sustained broken bones in her arm and leg, required multiple surgeries, spent time at a rehabilitation facility and treated her injuries at physical therapy. (Docket No. 35-11 at 21-35). At the time of her deposition, Plaintiff reported that she had not regained full flexibility in her knee, and she utilized a cane to ambulate. (*Id*. at 31-32). With the assistance of an attorney, she pursued an uninsured motorists claim against her own insurer and received a settlement. (*Id*. at 33-34). A PSP Internal Affairs Investigation cleared Marth and Hogue of any wrongdoing. (*See* Docket Nos. 45-12; 45-13). The criminal investigation determined that the vehicle Gardner was driving was stolen and that he unlawfully possessed a firearm, leading to him being charged with several offenses. (Docket No. 35-1 at 157). He ultimately pled guilty to aggravated assault and possession of a firearm and was sentenced to 3-6 years' confinement. (*Id*.).

Defendants have now moved for summary judgment arguing that they had no personal involvement in Plaintiff's injuries and that they are otherwise entitled to judgment as a matter of law. (Docket No. 36). In response, Plaintiff conceded that she had "no valid claims against Defendants Miller, Maitland and O'Day," (Docket No. 44 at 1, n.1), and the Court issued an Order dismissing the claims against them and terminating them as parties. (Docket No. 50). As to her remaining § 1983 claim against Evanchick, Plaintiff admits that she cannot sue him in his official capacity[2] and advances a new theory that she can prove liability against him in his individual capacity without establishing an underlying Constitutional tort under *Fagan v. City of Vineland*, 22 F.3d 1283 (3d Cir. 1994). (Docket No. 44). She further maintains that she does not need to add Marth and Hogue as parties to this lawsuit. (*Id*.). Plaintiff also argues that she has presented

[2] The Court notes that Plaintiff does not contest Evanchick's position that any official capacity claims for damages would be barred by Eleventh Amendment immunity. (*See* Docket Nos. 36 at 5-6; 44 at 7, n.9).

sufficient evidence to create a genuine dispute of material fact as to her negligence claims under Pennsylvania law against PSP and alternatively suggests that she should be permitted to amend her complaint to cure the defective allegations under the more liberal standards of the Commonwealth. (*Id.*). In Reply, Defendants oppose any amendment at this stage and advocate that summary judgment should be entered in their favor. (Docket No. 48). Plaintiff declined to file a Sur-Reply by the deadline set by the Court. (*See* Docket No. 39).

Neither party requested oral argument and the Court does not believe that oral argument is necessary. The parties' disputes are therefore fully briefed and ripe for disposition. (Docket Nos. 33-36; 44-47; 48-49).

## III. DISCUSSION

As the Court writes primarily for the parties, it focuses on the legal issues necessary to resolve the Plaintiff's request to amend the Complaint and the motion for summary judgment regarding the remaining § 1983 supervisory liability claim against Evanchick. After addressing those issues, the Court discusses why it is appropriate to decline supplemental jurisdiction over the state law claims.

### *A. Plaintiff's Untimely and Procedurally Defective Request for Amendment*

In her Brief in Opposition, Plaintiff advances a new theory of § 1983 liability against Evanchick and informally requests that she be permitted to amend her Complaint in order to conform the facts to the evidence in this case. (Docket No. 44). Defendants counter that Plaintiff should not be permitted to amend her Complaint at this late stage of the proceedings. (Docket No. 48). As noted, Plaintiff declined to submit a Sur-Reply and has not addressed Defendants' arguments. (*See* Docket Nos. 32; 39). Having considered these disputes, the Court agrees with the defense that the proposed amendment is untimely and otherwise fails to meet the applicable

standards for amending pleadings in federal court.

As this Court has recognized previously, it is well established that a party cannot amend her complaint through arguments set forth in her briefs in opposition to a motion for summary judgment. *See Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 F. App'x. 811, 819 n. 4 (3d Cir. 2004) (quoting *Williams v. New Castle County*, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992)) ("'a contention in a brief' 'clearly ... may not' be used to 'substitute for an allegation in a complaint.'"); *see also Nodaros v. UPMC Mercy*, Civ. A. No. 2:22-CV-355, 2024 WL 4680373, at *15 (W.D. Pa. Nov. 5, 2024). Likewise, a party cannot advance a new legal theory that is not set forth in her complaint in an opposition brief. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (plaintiff may not add a new claim in response to motion for summary judgment); *see also Josey v. John R. Hollingsworth Corp*., 996 F.2d 632 (3d Cir. 1993). Further, the proper procedure for a party seeking leave to file an amended complaint would be to file a timely motion before the deadline expires and attach the proposed amended complaint to same. *See McWreath v. Range Resources-Appalachia, LLC*, 81 F. Supp. 3d 448, 473 (W.D. PA. Jan. 26, 2015), *aff'd*, 645 F. App'x 190, 196 (3d Cir. 2016).

However, if the motion is filed after the deadline set by the Court, the liberal Rule 15 standard that leave to amend should be "freely granted when justice so requires," Fed. R. Civ. P. 15(a), gives way to the good cause standard under Rule 16 necessitating that a party demonstrate that she acted with diligence in seeking the amendment. *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). "Many courts have recognized that where the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Greygor v. Wexford Health Sources, Inc. et al.*, Civ, A. No. 14-1254, 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016)

(internal citation and quotation marks omitted). In addition, a party is bound by the decisions of her lawyers on whether to pursue an amendment and tactical errors and delays by experienced attorneys are not sufficient to establish diligence. *See Lehman Bros. Holdings v. Gateway Funding Diversified Mortgage Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (parties cannot "avoid the consequences of the acts or omissions of [their] freely selected agent[s]. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]")); *see also Graham v. Progressive Ins. Co.*, 271 F.R.D. 112, 121 (W.D. Pa. 2010) (holding that "tactical errors and delays by experienced attorneys, [...] do not demonstrate that Plaintiffs acted with diligence to this Court.").

In this Court's estimation, Plaintiff has not timely sought to amend her Complaint to add the new theory of § 1983 liability against Evanchick under *Fagan v. City of Vineland* because she missed the January 7, 2025 deadline to amend pleadings and has neither established good cause nor that she acted with diligence regarding the proposed amendment. *See Race Tires*, 614 F.3d at 84. To that end, Plaintiff's original theory against Evanchick set forth in the operative Complaint is a § 1983 supervisory liability claim that relies upon the commission of a Constitutional violation by Miller under the state created danger doctrine. (Docket No. 1-1). Yet, the record plainly reflects that the written discovery and document production from the defense showed that Miller was not the driver of the PSP vehicle pursuing Gardner and that Plaintiff had all of this information months before the deadline. (Docket Nos. 14-17; 35-1). Plaintiff's counsel even acknowledged that the claims against Miller were defective during her deposition. (Docket No. 45-1). The record similarly establishes that Plaintiff had sufficient information to timely move to amend her Complaint to add the new theory of § 1983 liability against Evanchick under the deadlines

established by the Court and/or prior to the later April 21, 2025 deadline for the close of discovery. (*See* Docket No. 20).

Despite possessing such information, Plaintiff's counsel made no effort to amend the Complaint until nearly a full year after discovery closed and six weeks after the summary judgment motion was filed. (*See generally* Docket Report, Civ. A. No. 24-1187; *see also* Docket Nos. 14-17; 35-1). Rather than follow the required procedures by moving for leave to amend and submitting a proposed amended complaint, Plaintiff's counsel used an opposition brief to raise the new theory. (*See* Docket No. 44). She also dropped her claims against Miller, Maitland, and O'Day in footnotes to the brief more than a year after acknowledging the defects and only after Defendants moved for summary judgment. (*Id.*).

Whether the action (or inaction) by counsel is characterized as strategic or erroneous is inconsequential as neither suffice to show that Plaintiff acted with enough diligence to demonstrate good cause under the applicable Rule 16 standards.[3] *See Race Tires*, 614 F.3d at 84. As is discussed in the next section, Evanchick is also prejudiced because he has not had an opportunity to answer the new theory, raise defenses, including qualified immunity, and/or discover facts related to this new theory. *See* § III.B., *infra*.

For all of these reasons, Plaintiff's request to amend the Complaint set forth in her opposition brief is denied.

---

[3] The Court notes that Plaintiff's counsel states that he believes that Marth and Hogue could not be added as defendants because he received the case less than 1 month prior to the expiration of the statute of limitations and he did not know their identities at that time. (Docket No. 44 at 7, n.10). While the statute of limitations for § 1983 claims is 2 years, the Court expresses no opinion as to the potential applicability of a statute of limitations defense to claims that have not been raised. However, the Court adds that the detailed PSP Report of the incident indicates that Miller contacted Plaintiff's husband on November 12, 2022 in reference to the preliminary hearing in Gardner's criminal case and she was told to contact their attorney for assistance in obtaining medical records. (Docket No. 35-1 at 125). Miller added that on November 30, 2022, she contacted the office of Robert Boyd and requested Plaintiff's medical records. (*Id.*). Plaintiff also testified that Attorney Boyd represented her in an uninsured motorists claim against her insurer. (Docket No. 35-11 at 34). So, it appears that Plaintiff was represented by counsel in the months following the accident.

*B. Motion for Summary Judgment by Evanchick*

To reiterate, Plaintiff claims that Evanchick is liable under § 1983 as he acted with deliberate indifference by failing to adopt, train and/or enforce appropriate vehicle pursuit policies within the PSP which "led to the unconstitutional police pursuit conducted by Defendant Miller and ultimately the injuries to the Plaintiff." (Docket No. 1-1 at ¶ 84). Evanchick maintains that he is entitled to summary judgment because there are no genuine disputes of material fact, he lacks personal involvement in the injuries Plaintiff allegedly sustained, and his policymaking was not a cause of her injuries because Miller did not engage in an unconstitutional pursuit of Gardner. (Docket No. 34). As noted, Plaintiff dropped her state created danger claim against Miller and concedes that she was not at the wheel of the PSP vehicle which briefly pursued Gardner before he crashed into Plaintiff's vehicle. (Docket No. 44). Without amending her Complaint, Plaintiff now asserts that her claim may go forward against Evanchick without proving the underlying Constitutional violation. (*Id.*). In light of these arguments, the Court holds that Evanchick is entitled to summary judgment on the § 1983 substantive due process claim.

1. Legal Standards

Briefly, the standards governing summary judgment motions are well settled. Rule 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). Further, "[a] dispute is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Clews v. County of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking summary judgment "must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 160 (3d Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings." *Conboy*, 992 F.3d at 160; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In this regard, the non-movant must come forward with more than "some metaphysical doubt as to the material facts." *Conboy*, 992 F.3d at 160; *see also Matsushita*, 475 U.S. at 586-87.

2. Analysis

It is this Court's opinion that there are no genuine disputes of material fact and the § 1983 substantive due process claim against Evanchick fails for several reasons.

Initially, "personal involvement of each defendant is a prerequisite to liability in § 1983 cases" and "a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018). A supervisor cannot be held liable for the acts of subordinates under theories of vicarious liability or respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather,

> [s]uits against high-level government officials must satisfy the general requirements for supervisory liability. In particular, supervisors are liable only for their own acts; [and] they are liable only if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725

> (3d Cir. 1989)) (alteration in original).

*Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). To establish such a claim,

> [t]he plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 810 (3d Cir. 2019) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *cert. granted, judgment rev'd sub nom. Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015)). In addition, a claim for supervisory liability necessarily fails if it is determined that there is insufficient evidence to support an underlying Constitutional violation. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (citations omitted) ("Talley's claims of supervisory liability and conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.").

Here, Plaintiff pled that Evanchick's policymaking led to Miller's allegedly unconstitutional pursuit and her injuries but now admits that Miller was not involved in the pursuit, all claims against Miller have been dropped and she is no longer a party to this lawsuit. (Docket Nos. 1-1; 44). As the underlying Constitutional claim pled in the Complaint has been dismissed, Plaintiff has failed to present sufficient evidence to raise a genuine dispute of material fact regarding an essential element of her § 1983 claim against Evanchick. *See Talley*, 786 F. App'x at 329. Thus, the Court holds that summary judgment is appropriately entered in favor of

Evanchick on this basis alone.

Although no further discussion is necessary, the Court alternatively finds that even if Plaintiff had properly substituted Marth, any state created danger claim[4] would still fail because she has not presented sufficient evidence to create a genuine dispute of material fact that Marth (or anyone else) acted with the subjective intent to harm her. Plaintiff maintains that the lesser "hurried deliberation" standard under *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018) should control because the PSP corporals surveilled and tailed Gardner's vehicle for approximately 10 minutes before Marth initiated the pursuit. (Docket No. 44). However, she does not address the Third Circuit's more recent pronouncements in *Otero v. Kane*, 161 F. 4th 189, 193 (3d Cir. 2025) which make clear that the intent to harm standard applies here. In *Otero*, the Court of Appeals explained:

> When a private person […] harms another private person […], police are seldom liable under the Fourteenth Amendment. To be liable for creating a danger that violated someone's constitutional rights, police must act so culpably that their behavior "shocks the conscience." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). This culpability standard turns on timing—the less time an officer has to act, the less blameworthy a flawed decision is. We have recognized three categories of culpability:

---

[4] The Court notes that the elements of a state created danger claim include:

> (1) [t]he harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sauers*, 905 F.3d at 717 (quoting *Haberle*, 885 F.3d at 176-77) (citation omitted).

> 1) If the situation was "hyperpressurized," requiring "split-second decisions," the officer is not liable unless he intended to harm.
>
> 2) If the situation gave the officer hours or minutes to engage in "hurried deliberation," the officer is not liable unless he "consciously disregarded ... a great risk of serious harm."
>
> 3) If the situation was "unhurried" and left time for "careful deliberation," the officer can be liable if he was "deliberately indifferent" to the risk of harm.
>
> *Id.* at 717–18 (cleaned up); *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) (cleaned up).
>
> Most police chases fall into Category 1, triggering the intent-to-harm standard.
>
> …
>
> To figure out the relevant timeframe for culpability, we need to know when to start the clock.
>
> …
>
> Officers cannot be liable for following a suspect lawfully and safely at an ordinary speed. Nothing about following a suspect or turning on police lights and a siren is inherently risky or dangerous to the public.
>
> Rather, our precedent starts running the clock when, in the totality of the circumstances, an event occurs that requires officers to decide whether to pursue a suspect dangerously.

*Otero v*, 161 F.4th 192-93. Accordingly, "where an officer engages in a high-speed pursuit arising from 'split-second decisions to pursue fleeing suspects,' [Courts] continue to abide by the 'longstanding principle' that 'constitutional liability cannot exist absent an intent to harm.'" *Miller v. Wolk*, No. 24-1863, 2026 WL 1587518, at *3 (3d Cir. June 3, 2026).

Viewing the facts in the light most favorable to Plaintiff, the totality of the circumstances show that Gardner accelerated upon seeing the PSP vehicle, leading Marth to initiate the pursuit through a residential neighborhood and while the PSP vehicle reached speeds up to 60 miles per

hour, the pursuit lasted approximately 1 minute and covered only three quarters of a mile. (*See* Dash Cam Video, Def. Ex. F, Docket No. 35-6; *see also* S. Becker Technical Report, Pl. Ex. 6, Docket No. 45-6). Plaintiff's own expert concluded that the PSP vehicle had started to decelerate and was approximately a block away from the accident between Gardner's and Plaintiff's vehicles. (Docket No. 45-6). Plaintiff has not argued that Marth acted with the subjective intent to harm in initiating the brief pursuit of Gardner and there is simply no evidence from which a reasonable jury could conclude that Marth acted with sufficient intent to hold her liable under a state created danger theory. *See Miller*, 2026 WL 1587518, at *4 ("Where the intent-to-harm standard applies, plaintiffs may only recover if they can show that the defendant had the subjective intention to inflict harm for reasons unrelated to any legitimate governmental interest."); *see also Otero*, 161 F.4th at 194 ("The events of that morning, and Martinez's death, were tragic. But Officers Kane and Hernandez are not liable for Ellison's reckless flight. They made a snap judgment to chase a drug dealer fleeing dangerously through the streets of Philadelphia. We ask not whether in hindsight they chose rightly, but whether they intended to cause harm. Because they did not, the U.S. Constitution and § 1983 provide no remedy.").

Without sufficient proof of an essential element of the state created danger claim, Plaintiff cannot demonstrate that any of Evanchick's underlings committed a Constitutional tort such that she has failed to meet her burden to present enough evidence from which a reasonable jury could find that he is subject to supervisory liability as a policymaker under § 1983. *See Talley*, 786 F. App'x at 329. Hence, summary judgment is appropriately entered in favor of Evanchick on this alternative basis as well.

Finally, the Third Circuit's decision in *Fagan v. City of Vineland*, upon which Plaintiff's newly advanced theory relies, recognized that a local municipality may be held liable under *Monell*

in the absence of an underlying Constitutional violation by a state actor. *See Fagan*, 22 F.3d at 1292. The Third Circuit subsequently noted that "we carefully confined *Fagan* to its facts: a substantive due process claim resulting from a police pursuit." *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124, n.5 (3d Cir. 2003). While this case involved a pursuit, Plaintiff has not cited any authority for the proposition that *Fagan* may be extended to a supervisory liability claim against a state official sued in his individual capacity. (*See* Docket No. 44). District Courts have also noted that "[t]he question of whether a state official may be sued individually under *Monell* is 'an unsettled question in the Third Circuit.'" *Forniel v. Hamati-Attieh*, No. CV 25-0117, 2026 WL 146670, at *4 (E.D. Pa. Jan. 20, 2026) (quoting *Quinn-Winne v. Pennsylvania*, No. CV 20-2493, 2022 WL 767828, at *2 (E.D. Pa. Mar. 14, 2022)).

A municipal entity does not "enjoy qualified immunity from suit for damages under § 1983," but a supervisory official sued in his individual capacity (like Evanchick is sued here) may invoke qualified immunity. *See Barna v. Board of School Directors of Panther Valley School District*, 877 F.3d 136, 145 (3d Cir. 2017); *see also Sample v. Diecks*, 885 F.2d 1099, 1117–18 (3d Cir. 1989) ("Although the issue here is one of individual liability rather than of the liability of a political subdivision, we are confident that, absent official immunity, the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve."). Since Plaintiff did not properly amend her Complaint to bring this new theory, Evanchick has not had a full and fair opportunity to raise the defense of qualified immunity at this stage, but the Court believes that the defense may provide an independent basis to grant summary judgment given the lack of authority for such a claim. *See James v. New Jersey State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)) (further citations omitted) ("For qualified-immunity

purposes, 'clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals.'").

3. Conclusion as to § 1983 Claim

For all of the aforementioned reasons, the Court will enter summary judgment in favor of Evanchick and against Plaintiff on the § 1983 claim.

*C. Supplemental Jurisdiction Over Negligence Claims Against PSP*

With respect to the negligence claims against PSP, section 1367(c)(3) "permits a district court to decline the exercise of supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). The United States Court of Appeals for the Third Circuit has held that district courts "'*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Barraclough v. Animal Friends, Inc.*, No. 23-3157, 2024 WL 4867068, at *3 (3d Cir. Nov. 22, 2024) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis added by *Barraclough* court) (other citation omitted)). "[I]n a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

All told, the Court believes that declining supplemental jurisdiction is appropriate because this case was initially filed in the Court of Common Pleas of Lawrence County, the remaining negligence claims against PSP are state law theories, the parties are not diverse, and the considerations of judicial economy, convenience and fairness to the litigants do not provide the Court with a reason to retain jurisdiction. *See id.* Accordingly, the Court will exercise its

discretion to decline to exercise supplemental jurisdiction over the remaining claims and remand those claims to the Court of Common Pleas of Lawrence County for further proceedings.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's request to amend is denied and Defendant's Motion for Summary Judgment [33] is granted, in part, and denied, in part. Defendant's Motion is granted to the extent that summary judgment will be entered in favor of Evanchick and against Plaintiff on her § 1983 claim. As there are no remaining federal claims in this action, the Court declines supplemental jurisdiction over the negligence claims against the PSP and will remand those claims to the Court of Common Pleas of Lawrence County for further proceedings. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: October 19, 2026

cc/ecf: All counsel of record

cc: Prothonotary, Court of Common Pleas of Lawrence County